LAKE LOUISE IMPROVEMENT ASSOCIATION *et al.*, Plaintiffs-Appellees, v. MULTIMEDIA CABLEVISION OF OAK LAWN, INC., Defendant-Appellant.

First District (5th Division)   No. 86—1941

Opinion filed June 19, 1987.

William J. Harte, Ltd., and Richard J. Prendergast, Ltd., both of Chicago, and Borla, Kubiesa & Power, P.C., of Westmont (William J. Harte, Richard J. Prendergast, Kenneth T. Kubiesa, and Joseph E. Tighe, of counsel), for appellant.

Gerard E. Dempsey, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by defendant, Multimedia Cablevision of Oak Lawn, Inc. (Multimedia), from a decision of a trial court finding unconstitutional the Illinois cable access statute (the Act) (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—11 *et seq.*) and granting plaintiffs a preliminary injunction.

We reverse and remand without deciding at this time the constitutional issues presented.

The plaintiffs, Lake Louise Improvement Association, an Illinois not-for-profit corporation, and Zeke Olszewski, individually and as class representative of all other persons and corporations who are members of the Lake Louise Improvement Association (hereafter collectively referred to as the association), filed a complaint for declaratory and other relief in the circuit court of Cook County. The association's complaint concerns the installation of cable television equipment by Multimedia upon property held in common ownership by it.

On June 26, 1986, the trial court granted the association's motion for a preliminary injunction and restrained Multimedia during the pendency of the action from attempting to install cable television facilities upon the commonly owned property of the association.

The trial court predicated its order on a finding "that Illinois Revised Statute, chapter 24, section 11—42—11.1 fails to provide adequate safeguards for the taking of private property prior to compensation and that the said statute constitutes an unconstitutional taking of private property for a private use."

On July 16, 1986, Multimedia filed its notice of interlocutory appeal pursuant to Rule 307 of the Rules of the Illinois Supreme Court (107 Ill. 2d R. 307).

The sole issue on appeal is the trial court's issuance of a preliminary injunction based on its finding of the unconstitutionality of the underlying statute.

The following facts are undisputed. Illinois law authorizes its various municipalities to "license, franchise and tax" cable television systems. (Ill. Rev. Stat. 1985, ch. 24, par. 11—24—11.) The Act also provides that:

> "no property owner, condominium association, managing agent *** in possession and control of any improved or unimproved real estate located within such designated franchise area shall forbid or prevent such cable television franchisee from entering upon such real estate for the purpose of and in connection with the construction or installation *** [upon] such real estate *** hardware, cable, equipment, materials or other cable television facilities utilized by such cable franchisee in the construction and installation of such cable television system." (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—11.1(b).)

The Act further provides for the payment of just compensation in excess of $1 in exchange for permitting the installation and provides procedures for determining just compensations. Ill. Rev. Stat. 1985, ch. 24, par. 11—42—11.1(c).

The village of Oak Lawn by ordinance provided for the granting of nonexclusive franchises to construct and operate Broadbeam Communications Systems in the public ways of its village (Oak Lawn Ord. No. 80—14—27, approved June 10, 1980). Pursuant to this ordinance, the village entered into a contract with Multimedia awarding that corporation a franchise to "construct, operate and maintain" a Broadbeam television network on the public ways of the village. The ordinance provided for a lump-sum payment of $1 million by Multimedia as advance payment to the village in addition to other provisions.

Neither party questions the validity of the village ordinance authorizing the granting of cablevision franchises nor the village's contract with Multimedia. Both parties ably argue the issue of whether the trial court properly or improperly determined that the statute authorizing cable television franchisees to enter on private property to install their equipment is an unconstitutional taking of private property for a private purpose.

Both the fifth amendment of the United States Constitution and article 1, section 15 of the Constitution of the State of Illinois inhibit the taking or damaging of private property for a public purpose without payment of just compensation. What constitutes a "public purpose" within the meaning of this constitutional inhibition has plagued the American judiciary ever since it arrogated to itself the prerogative of interpreting constitutions.

Some courts have been reluctant to interfere with a legislative de-

termination of a public purpose absent a "clear abuse" of the legislative power. (*Department of Public Works & Buildings v. McNeal* (1965), 33 Ill. 2d 248, 252, 211 N.E.2d 266.) Other courts have held that the determination of whether a given use is a public use so that the right of eminent domain may be exercised is a judicial function. (*People ex rel. Touhy v. City of Chicago* (1946), 394 Ill. 477, 68 N.E.2d 761.) Still other courts have held that what is for the public good and what are public purposes are decided in the first instance by the legislature, which is vested with broad discretion in its determination, but the final determination of whether the use or purpose is within the limits of legislative discretion is a judicial function. *Poole v. City of Kankakee* (1950), 406 Ill. 521, 94 N.E.2d 416.

■■ ■ These Illinois cases suggest that the question of whether a particular taking authorized by a legislative enactment should not be construed constitutionally without a complete inquiry into the substance of the legislation and its ultimate purpose. Further, all legal presumptions are in favor of the constitutionality of legislation and all reasonable doubts resolved in its favor. (*Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 144 N.E.2d 735.) This presumption imposes the burden of establishing the unconstitutionality of a statute on the party attacking its validity rather than the party defending it. *Grenier & Co. v. Stevenson* (1969), 42 Ill. 2d 289, 247 N.E.2d 606.

Here it was the defendant who presented evidence in the trial court as to the advantageous aspects of cable T.V. in the educational, civic and political fields. Representative Cullerton, a member of the General Assembly and sponsor of the legislation, testified as to the relevant statute and its public purpose. Also testifying were Frank E. Sheley, president of Rockford Park Cablevision and president of the Cable Television Association, and Terry Gorsuch, Multimedia's regional vice president, responsible for the operation, marketing and development of 17 cable television franchises in Illinois.

Based on the constitutional presumption of validity and the evidence presented by defendant, preliminarily, it is patently disclosed that the purpose of the proposed taking was a public rather than the private one found by the trial court.

■■ Next, a court should not decide a cause on constitutional grounds if it can be determined on other grounds. (*People v. Dixon* (1963), 28 Ill. 2d 122, 190 N.E.2d 793.) In this case there is as yet no evidence as to the amount of damage, if any, to the plaintiff's property that would be caused by defendant's installation, nor is there any evidence of what would be just compensation. If the ultimate facts show that the installation did not damage the property or the installa-

tion, in fact, enhanced the value of the property, there would be no need to determine the constitutional question.

■■ As a general proposition of law, to have standing to challenge the validity of a statutory provision, one must have sustained or be in the danger of sustaining a direct injury as a result of the enforcement of the provision. (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E. 2d 924.) On the other hand, if the plaintiffs are, in fact, damaged or entitled to just compensation by reason of defendant's proposed action, they have an adequate remedy at law by way of an action in trespass or inverse condemnation. Equity normally does not permit an injunction where the party has an adequate legal remedy. *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 438 N.E.2d 159.

■■ Moreover, a court will inquire into the constitutionality of a statute only to the extent required by the case before it and will not formulate a rule broader than necessitated by the precise question presented. (*Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 106 N.E.2d 124.) In this case the trial court apparently found unconstitutional the entire Illinois act relating to cable television. (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—11 *et seq.*) The Act provides for municipal licensing as well as authorizing the franchisees the right to enter private property and install equipment. The record discloses that there are 140 cable television systems in the State serving 1.4 million households. The trial court's overly broad finding, if allowed to stand, could affect the validity of other Illinois municipal franchises.

We note that in Illinois the constitution does not preclude the prior taking of private property for a public use when provisions for just compensation for the property and damages assure the landowner that he will receive just compensation. (*Department of Public Works & Buildings v. Butler Co.* (1958), 13 Ill. 2d 537, 150 N.E.2d 124.) The provisions of the Act found unconstitutional by the trial court provide for the payment of just compensation after installation. Whether these provisions are adequate to assure the landlord or owner just compensation in a particular situation is a matter that ought to be considered in the allowance or disallowance of a temporary restraining order and the breadth of such order.

■■ Finally, as a general rule, an attack on the constitutionality of a statute should not be resolved upon application of a temporary injunction. (*Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.) Also, any injunction must be reasonable and go no further than is essential to safeguard plaintiffs' rights. *Kessie v. Talcott* (1940), 305 Ill. App. 627, 27 N.E.2d 857.

■ ■ This court recognizes that the prime purpose of a preliminary injunction is to preserve the status quo between the parties. (*Illinois Consolidated Telephone Co. v. Aircall Communications, Inc.* (1981), 101 Ill. App. 3d 767, 428 N.E.2d 747.) The status quo in this case would be better kept if no finding as to the constitutionality of the statute authorizing the franchising of cable television by municipalities (Ill. Rev. Stat. 1985, ch. 24, par. 11—42—11.1) be made until the conclusion of the litigation, with the trial court, in the meantime, fashioning a preliminary injunction that would protect the rights of all the parties pending a final determination of the extremely important modern issues tendered by the case.

For the foregoing reasons the trial court's order, judgment or decree granting the association's request for a preliminary injunction based on a finding of unconstitutionality is reversed. The cause is remanded for the fashioning, if necessary, of a temporary injunctive decree not inconsistent with this opinion.

Reversed and remanded.

LORENZ and PINCHAM, JJ., concur.